UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X
MICHAEL ZENTACK,

                    Plaintiff,

                                              <u>MEMORANDUM & ORDER</u>
                                              10-CV-1526(JS)

          -against-

MICHAEL J. ASTRUE, Commissioner of
Social Security,

                    Defendant.
-----------------------------------X
APPEARANCES
For Plaintiff:     Michael Zentack, <u>pro se</u>
                   1012 Church Street
                   Bohemia, NY 11716

For Defendant:     Vincent Lipari, Esq.
                   United States Attorney's Office
                   Eastern District of New York
                   610 Federal Plaza, 5th Floor
                   Central Islip, NY 11722

SEYBERT, District Judge:

          Plaintiff Michael Zentack ("Plaintiff") commenced this

action pursuant to Section 205(g) of the Social Security Act, as

amended, 42 U.S.C. § 405(g), challenging the Defendant

Commissioner of Social Security's (the "Commissioner") denial of

his application for Supplemental Security Income ("SSI").

Presently before the Court is the Commissioner's motion for

judgment on the pleadings. For the reasons explained below, the

Commissioner's motion is DENIED, and this matter is remanded for

further consideration in accordance with this Memorandum and

Order.

<u>BACKGROUND</u>

On April 5, 2007, Plaintiff was assaulted by three teenagers in front of his home in West Sayville, New York. (R. 25-26.)[1] He went to the emergency room and was treated for neck and back pain. (R. 151.) On August 1, 2007, Plaintiff applied for SSI benefits, asserting that he had been disabled since January 1, 2007[2] due to a joint problem, a back problem, depression, and nervousness. (R. 54, 95.) This application was denied on November 20, 2007. (R. 51-54.) On January 17, 2008, Plaintiff requested a hearing before an administrative law judge ("ALJ") (R. 55), which took place on May 11, 2009, before ALJ Brian J. Crawley (R. 20). Plaintiff waived his right to be represented by counsel and was the only witness to testify at the hearing. (R. 22-47.)

The Court will first summarize the relevant evidence that was presented to the ALJ. Then the Court will summarize the ALJ's findings and conclusions.

I.   <u>Non-Medical Evidence</u>

Plaintiff was born in 1970 in Suffolk County, New York. He completed school through the tenth grade and dropped

---

[1] "R." denotes the administrative record which was filed by the Commissioner on July 27, 2011. (Docket Entry 17.)

[2] Plaintiff actually stated that he had been disabled since the 1980s; however, he was only seeking SSI benefits dating back to January 1, 2007. (R. 96.)

out when he was fifteen years old; he returned to get his general equivalency diploma ("GED") in 1993 when he was twenty-three years old.  (R. 40-41.)

Plaintiff had no reported income prior to 1993.  (R. 115.)  That year, he obtained employment as a "driver's helper" for a window installation company.  (R. 110, 120.)  His responsibilities included providing directions to the driver and loading and unloading windows from the truck.  (R. 120.)  The job required him to walk for five hours per day, sit for three hours per day, and lift 100 to 200 pounds at a time.  (R. 120.)  The following year, Plaintiff worked as an air conditioner installer which involved standing and walking for eight hours per day and lifting 50 to 150 pounds.  (R. 117.)  Then, from 1994-1995, in 2000, and again in 2005, Plaintiff worked as a roofer, walking, standing, and climbing up to ten hours per day and lifting 80 to 100 pounds.  (R. 110, 111, 119.)  Plaintiff then worked as an air conditioner installer again for three months in 2006 (R. 110), and for two months in 2007 Plaintiff worked for a power washing and painting company (R. 147).  Plaintiff stopped working after he was assaulted on April 5, 2007 and has not returned to work.  (R. 25.)

Plaintiff testified that he lives with his mother and younger brother.  (R. 25.)  Although he used to be very social, he now spends most of his time alone, has no friends, and no

longer attends family events. (R. 31-32, 36, 128.) Plaintiff spends most days at home watching television with his mother and brother, reading self-help books, and writing in a journal. (R. 31, 33-34, 36.) He is capable of bathing and dressing himself, and he occasionally helps out around the house by washing dishes, mowing the lawn, and doing laundry. (R. 34, 41, 123.)

II. Medical Evidence

There is evidence in the record that Plaintiff received treatment for both psychiatric and physical impairments. The Court will discuss the treatment Plaintiff received for his physical and psychiatric conditions separately.

A. Neck, Back, and Shoulder Impairments

Plaintiff went to the emergency room at Brookhaven Memorial Hospital Medical Center on April 5, 2007, complaining of neck and back pain from being assaulted. (R. 151.) A physical examination revealed that Plaintiff had tenderness and muscle spasms in his back and neck and a limited range of motion. (R. 152.) He was diagnosed with a sprain of the neck and thoracic spine and discharged that same day. (R. 152.)

Plaintiff followed up with Dr. Raymond Ebarb of the Great South Bay Family Medical Practice on May 18, 2007. (R. 157.) He told Dr. Ebarb that he had been "jumped" and complained of pain between his shoulders and radiating down both arms. (R. 157.) Dr. Ebarb observed that Plaintiff's upper

extremity strength was 5/5 but that there was exquisite tenderness of the trapezius and interscapular musculature bilaterally. Dr. Ebarb diagnosed Plaintiff with cervical radiculopathy, ruled out herniated nucleus pulposus, and cervical strain. He prescribed Voltaren, physical therapy, and ordered an MRI of Plaintiff's cervical spine. (R. 157.) There is no evidence in the record that Plaintiff began physical therapy or had an MRI.

The record reflects that Plaintiff did not see another doctor for his neck and back pain until October 10, 2007 when he was examined by a consultative examiner for the Social Security Administration ("SSA"), Dr. Samir Dutta of Industrial Medicine Associates. (R. 174-176.) Dr. Dutta noted that Plaintiff's ability to sit was not limited and his ability to stand, walk, and lift heavy weights was mildly limited. (R. 176.) An x-ray of Plaintiff's right shoulder was unremarkable. (R. 177.) Dr. Dutta diagnosed Plaintiff with rule out degenerative disk disease of the dorsal and cervical spines, tendinitis or acromioclavicular joint impingement of the right shoulder, and a history of depression. (R. 176.)

On January 9, 2008, Dr. Ebarb diagnosed Plaintiff with cervical radiculopathy, prescribed six weeks of physical therapy as well as Flexeril and Neurontin, and ordered an MRI of the cervical spine. (R. 211.) The record only contains Dr. Ebarb's

prescriptions. There is no evidence in the record documenting any additional examinations performed by Dr. Ebarb. Plaintiff had an MRI of his cervical spine on March 1, 2008, which revealed "[s]mall bulging discs from C5 to C7," "[d]egenerative disc disease from C2 to T1," and "[s]traightening of the normal cervical spine lordosis consistent with muscle spasm." (R. 214.) There is no evidence in the record that Plaintiff followed-up with Dr. Ebarb after receiving the results of his MRI.

On March 21, 2008, Plaintiff was examined by Dr. Marsha Alger, a family practitioner at the Stony Brook University Medical Center. Plaintiff complained of neck and back pain at a level eight in intensity on a scale of one to ten. (R. 244.) Dr. Alger observed that Plaintiff's neck exhibited no crepitus or deformity and had a full range of motion and that the strength of Plaintiff's upper extremities was 5/5. Dr. Alger diagnosed Plaintiff with neck pain and major depressive disorder. She prescribed physical therapy, Neurontin, Norflex, and Vicodin. She also recommended a psychiatric evaluation. (R. 245.)

Plaintiff met with Dr. Alger again on May 1, 2008 complaining of neck and stomach pain. (R. 248.) Plaintiff had been receiving physical therapy for two weeks, but he felt that it made the pain worse (although then better the next day). (R.

248.)  Dr. Alger referred Plaintiff to an orthopedist and a pain clinic and refilled his prescriptions for Neurontin and Norflex. Plaintiff also requested a refill of his Vicodin prescription, which led Dr. Alger to note that he was possibly malingering. (R. 248.)  She suggested that Plaintiff return in three-to-four weeks. (R. 248.)

Plaintiff followed up with Dr. Alger on September 16, 2008. (R. 249.)  He reported that he was still experiencing neck pain when sitting or standing for more than forty-five minutes. (R. 249.)  Plaintiff had not yet seen an orthopedist, but he claimed that the Neurontin and Norflex helped. (R. 249.) The physical therapy, on the other hand, provided no relief. Dr. Alger again referred Plaintiff to an orthopedist and a pain clinic, refilled his prescriptions for Neurontin and Norflex, and prescribed a cervical collar.  Dr. Alger noted that Plaintiff was "malingering," and "can work."  (R. 249.)  She recommended that he follow-up in two months.  (R. 249.)

The record reflects that Plaintiff met with Dr. Alger again on May 14, 2009. (R. 250.)  Plaintiff claimed that he was experiencing neck pain at a level eight in intensity on a scale of one to ten and chronic neck spasms. (R. 250-51.)  Plaintiff had been taking Trazadone and Cymbalta, which he said brought the pain to a three out of ten in intensity, so Dr. Alger did not refill his prescriptions for Neurontin and Norflex.  (R.

251.)  Dr. Alger diagnosed Plaintiff with neck pain and tendinitis of the right shoulder, for which she gave him an injection.  (R. 251.)  Plaintiff again requested a prescription for Vicodin, and Dr. Alger again noted that she believed that he was malingering.  (R. 251.)  Dr. Alger concluded that Plaintiff could work but could not lift more than ten pounds or engage in any repetitive arm movements.  (R. 251.)

    B.   <u>Depression, Social Anxiety, and Post-Traumatic Stress</u>

Plaintiff testified that he has struggled with anxiety and depression his entire life.  (R. 38.)  He is a victim of child abuse, which started when he was an infant and continued until he dropped out of high school and left home.  (R. 38.)  Although he asserts that he had seen many psychiatrists (R. 158), the record only contains evidence of treatment by the following doctors and therapists.

On August 29, 2005, Dr. Aida, a physician at Great South Bay Family Medical Practice, saw Plaintiff for anxiety and insomnia.  (R. 158.)  She prescribed Xanax and referred Plaintiff for a psychiatric consultation.  (R. 158.)

On October 10, 2007, Joseph Andrews, Ph.D., conducted a consultative psychiatric evaluation for SSA.  (R. 169.)  He diagnosed Plaintiff with major depressive disorder without psychotic features, panic disorder without agoraphobia, social phobia (provisional), and post-traumatic stress disorder

("PTSD") (provisional).  (R. 172-73.)  Dr. Andrews concluded that Plaintiff could follow and understand directions, perform simple tasks independently, maintain a regular schedule, learn and perform new tasks, and make appropriate decisions.  (R. 172.)  However, Dr. Andrews also opined that Plaintiff might have difficulty relating to others and dealing with stress in the workplace.  (R. 172.)  He concluded that the results of his examination, "do not appear to be significant enough to interfere with the [Plaintiff]'s ability to function on a daily basis."  (R. 172.)  Dr. Andrews recommended psychological and psychiatric treatment and a medical evaluation.  (R. 173.)

Dr. Andrews' notes indicate that Plaintiff had been hospitalized in 1994 for depression, received outpatient treatment from a therapist named Judith Johnson in 2005, and met with another therapist, Colleen Stanley, on a weekly basis in 2007.  (R. 169.)  The ALJ attempted to obtain records from Ms. Stanley, but was told that her organization, National EAP, "does not provide any medically necessary services" or "maintain medical records."  (R. 168.)  Plaintiff told Dr. Andrews that he was no longer receiving psychological or psychiatric treatment because he could no longer afford it.

Plaintiff was examined by another SSA consultative examiner, Dr. C. Anderson, on November 16, 2007, who diagnosed Plaintiff with major depression (R. 178, 181), panic disorder,

social phobia, and PTSD (R. 183).  He felt that this only mildly affected Plaintiff's daily activities, social functioning, and ability to maintain concentration, persistence, or pace.  (R. 188; see also R. 194 (concluding that "there are no marked impairments in the [claimant's] ability to understand, concentrate, remember, adapt, relate, or persist with tasks on a sustained basis").)  Dr. Anderson concluded that Plaintiff had "no significant psych impairments," and stated that although Plaintiff's complaints of depression, anxiety, and social disorder were "partially credible," "[t]here [was] no evidence of marked functional impairments due to a psych impairment." (R. 194.)

In early January 2008, Plaintiff began seeing Richard M. Lawless, Th.D., a therapist and pastoral counselor that he was referred to by the Victims Information Bureau of Suffolk. (R. 212.)  The record contains a letter from Dr. Lawless dated January 9, 2008 submitted "in support of Plaintiff's contention that he was unable do such work [i.e., the construction and/or roofing work that he had done throughout his adult life]" and "at least for the foreseeable future, that situation will be unlikely to change."  (R. 212.)  Due to Plaintiff's recent assault and his history of abuse, Dr. Lawless concluded that the Plaintiff was incapable of resuming a regular work life.  (R. 212.)  Dr. Lawless offered to provide additional information

"[u]pon Mr. Zentack's signed release" (R. 212); however, there is no additional information from Dr. Lawless in the record.

On August 18, 2008, Plaintiff was examined by Dr. D. Amin of the Pederson Krag Center, who diagnosed Plaintiff with depressive disorder, anxiety disorder, and rule out PTSD. (R. 223, 226.) Dr. Amin also found that Plaintiff had Global Assessment of Functioning ("GAF") of 60, which indicates that he had only moderate symptoms and/or moderate difficulty in social, occupational, or school functioning. (R. 226, 16.) He prescribed Cymbalta for Plaintiff's neck and nerve pain and suggested psychotherapy. (R. 226.)

On January 5, 2009, Kathleen Acer, Ph.D., a psychiatrist who had been treating Plaintiff once a week since July 2008, performed a "psychological assessment for determination of employability" of Plaintiff for the Suffolk County Department of Social Services. (R. 215-20.) Dr. Acer diagnosed Plaintiff with major depressive disorder, anxiety disorder, social phobia, and PTSD. Dr. Acer also found that Plaintiff had a GAF score of 45, which indicates serious symptoms and/or difficulty in social, occupational, or school functioning. (R. 218.) Dr. Acer determined that although Plaintiff was capable of following, understanding, and remembering simple instructions and directions and using public transportation, he was unable to participate in any activities

except treatment or rehabilitation for at least six months, given the significant impact his psychiatric symptoms had on his daily functioning. (R. 218-19.)

In a report to Suffolk County dated April 30, 2009, Debra Donaldson, a licensed master social worker ("LMSW"), diagnosed Plaintiff with depressive disorder, anxiety disorder, and rule out PTSD. (R. 221.) She also noted that Plaintiff was being treated with medication and individual counseling. Ms. Donaldson's prognosis was that Plaintiff had "made some progress but continue[d] to struggle," and it was unknown when he would be able to return to work. (R. 221.)

## III. Decision of the ALJ

After reviewing all of the above evidence, the ALJ issued his decision on August 28, 2009, finding that Plaintiff is not disabled. (R. 11-19.) With respect to Plaintiff's complaints of neck, back, and shoulder pain, the ALJ found that while his "medically determinable impairments could reasonably be expected to cause the alleged symptoms[,] . . . the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with [his] residual functional capacity assessment." (R. 15.) The ALJ gave "substantial weight" to the opinions of Dr. Ebarb and Dr. Alger who concluded that Plaintiff could perform sedentary work. (R. 15-16.) The

ALJ noted that their conclusions were also supported by Dr. Dutta's evaluation. (R. 16.)

With respect to Plaintiff's depression, social anxiety and PTSD, the ALJ gave the greatest weight to the opinion of Dr. Andrews--the Commissioner's consultative examiner--who concluded that Plaintiff's psychiatric problems were not significant enough to interfere with his ability to function on a daily basis. (R. 16-17.) The ALJ gave "little weight" to Dr. Acer's opinion that Plaintiff is unable to participate in any activities except treatment in rehab because "it is not explained and is contradicted by significant evidence, e.g., the reports of Drs. Alger and Andrews." (R. 16.) The ALJ also gave little weight to Dr. Lawless's opinion that Plaintiff is incapable of returning to work because Dr. Lawless is not a medical doctor and because his conclusions "are not supported by an explanation as to any findings or a mental status examination." (R. 17.) The ALJ did not specifically mention the opinions of Dr. Anderson and Dr. Amin.

The ALJ found that although Plaintiff was unable to perform his past work as an air conditioning installer, his symptoms did not prevent him from performing a full range of sedentary work. (R. 18.) The ALJ based his conclusion on the following:

> the claimant's descriptions of his
> activities of daily living, Dr. Alger's
> conclusion that the claimant is a
> malingerer, the findings of a GAF of 60, Dr.
> Dutta's assessment of the claimant's
> residual functional capacity (which shows
> significant work abilities), Dr. Andrews'
> finding that the claimant's psychiatric
> problems do not interfere with daily
> functioning, and the various above-discussed
> statements from medical sources that are
> contrary to the claimaint's allegations
> . . . .

(R. 17.)

Plaintiff sought review of the ALJ's decision by the Appeals Council (R. 5-7); the appeal was denied on December 28, 2009 (R. 2-4). Thus, the ALJ's decision is considered the final decision of the Commissioner. (R. 2.)

Plaintiff commenced this action on April 6, 2010 (Docket Entry 1) and filed an Amended Complaint on April 26, 2010 (Docket Entry 6). The Commissioner filed his Answer on September 7, 2010 (Docket Entry 13), and on November 15, 2010, the Commissioner moved for judgment on the pleadings (Docket Entry 15). The Commissioner filed the administrative record eight months later, on July 27, 2011. (Docket Entry 17.)

## DISCUSSION

I. Standard of Review

In reviewing the ruling of the ALJ, this Court will not determine de novo whether Plaintiff is entitled to SSI benefits. Thus, even if the Court may have reached a different

decision, it must not substitute its own judgment for that of the ALJ. See Jones v. Sullivan, 949 F.2d 57, 59 (2d Cir. 1991). Instead, this Court must determine whether the ALJ's findings are supported by "substantial evidence in the record as a whole or are based on an erroneous legal standard." Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000) (internal quotations marks and citation omitted), superseded by statute on other grounds, 20 C.F.R. § 404.1560. If the Court finds that substantial evidence exists to support the Commissioner's decision, the decision will be upheld, even if evidence to the contrary exists. See Johnson v. Barnhart, 269 F. Supp. 2d 82, 84 (E.D.N.Y. 2003). "Substantial evidence is such evidence that a reasonable mind might accept as adequate to support a conclusion." Id. (citing Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)). The substantial evidence test applies not only to the ALJ's findings of fact, but also to any inferences and conclusions of law drawn from such facts. See id.

To determine if substantial evidence exists to support the ALJ's findings, this Court must "examine the entire record, including contradictory evidence and evidence from which conflicting inferences may be drawn." See Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (internal quotation marks and citation omitted). "The findings of the Commissioner of Social

Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."  42 U.S.C. § 405(g).

II.  Eligibility for Benefits

A claimant must be disabled within the meaning of the Social Security Act (the "Act") to receive SSI benefits.  See Byam v. Barnhard, 336 F.3d 172, 175 (2d Cir. 2003); 42 U.S.C. § 1381a.  A claimant is disabled under the Act when he can show an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  The claimant's impairment must be of "such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  Id. § 1382c(a)(3)(B).

The Commissioner must apply a five-step analysis when determining whether a claimant is disabled as defined by the Act.  See Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); Petrie v. Astrue, 412 F. App'x 401, 404 (2d Cir. 2011).  First, the claimant must not be engaged in "substantial gainful activity."  20 C.F.R. § 416.920(a)(4)(i).  Second, the claimant must prove that he or she suffers from a severe impairment that significantly limits his or her mental or physical ability to do

basic work activities. Id. § 416.920(a)(4)(ii). Third, the claimant must show that his or her impairment is equivalent to one of the impairments listed in Appendix 1 of the Regulations. Id. § 416.920(a)(4)(iii). Fourth, if his or her impairment or its equivalent is not listed in the Appendix, the claimant must show that he or she does not have the residual functional capacity to perform tasks required in his or her previous employment. Id. § 416.920(a)(4)(iv). Fifth, if the claimant successfully makes these showings, the Commissioner must determine if there is any other work within the national economy that the claimant is able to perform. Id. § 416.920(a)(4)(v). The claimant has the burden of proving the first four steps of the analysis, while the Commissioner carries the burden of proof for the last step. See Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009). "In making the required determinations, the Commissioner must consider: (1) the objective medical facts; (2) the medical opinions of the examining or treating physicians; (3) the subjective evidence of the claimant's symptoms submitted by the claimant, his family, and others; and (4) the claimant's educational background, age, and work experience." Boryk v. Barnhart, No. 02-CV-2465, 2003 WL 22170596, at *8 (E.D.N.Y. Sept. 17, 2003) (citation omitted).

In the present case, the ALJ performed the above analysis, and his conclusions as to the first three steps do not appear to be in dispute. He found that Plaintiff was not employed and that his condition constituted a severe impairment that limited his capacity to work. The ALJ next determined that neither the Plaintiff's impairments nor a medical equivalent was among those enumerated in Appendix 1 and then proceeded to determine whether Plaintiff retained the residual functional capacity to perform his past work as an air conditioning installer. The ALJ found that although Plaintiff was not capable of performing his past work, he had the residual functional capacity to perform sedentary work.

The Court must determine whether the ALJ's decision is supported by substantial evidence. The Court will discuss the ALJ's decisions with respect to Plaintiff's alleged physical and mental disabilities separately.

A.  <u>Evidence of Physical Disability</u>

Plaintiff was examined by three separate doctors regarding his neck, back, and shoulder pain: his treating physicians, Dr. Ebarb and Dr. Alger, and the consultative examiner for SSA, Dr. Dutta. None of these doctors concluded that Plaintiff was disabled. In fact, both Dr. Alger and Dr. Dutta found that Plaintiff was capable of performing sedentary work. (R. 249 (Dr. Alger noting that Plaintiff was

"malingering," and "can work"); R. 251 (Dr. Alger concluding that Plaintiff could work so long as he was not required to lift more than ten pounds or do any work that would require no repetitive arm movements); R. 176 (Dr. Dutta noting that Plaintiff had no limitation sitting and mild limitation standing, walking, and lifting heavy weights).) See Connors v. Conn. Gen. Life Ins. Co., 272 F.3d 127, 136 n.5 (2d Cir. 2001) (sedentary work is work that "involves up to two hours of standing or walking and six hours of sitting in an eight-hour work day" (citing Curry, 209 F.3d at 123)).

The only evidence in the record to support the conclusion that Plaintiff's physical ailments rendered him disabled is Plaintiff's subjective reports of pain, which the ALJ discounted (see R. 15). The Second Circuit has held that "the subjective element of pain is an important factor to be considered in determining disability." Mimms v. Heckler, 750 F.2d 180, 185 (2d Cir. 1984) (citation omitted). However, "[t]he ALJ has the discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." McLaughlin v. Sec'y of Health, Educ. & Welfare, 612 F.2d 701, 705 (2d Cir. 1980) (alteration in original) (internal quotation marks and citation omitted). The Court will uphold the ALJ's decision to discount

a claimant's subjective complaints of pain so long as the decision is supported by substantial evidence.  See <u>Aponte v. Sec'y, Dep't of Health & Human Servs.</u>, 728 F.2d 588, 591 (2d Cir. 1984).  Here, the ALJ found that although "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms," his "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible."  (R. 15.)  The Court finds that there is substantial evidence in the record to support this conclusion.  <u>First</u>, Dr. Alger opined on multiple occasions that Plaintiff was a malingerer--specifically that he was exaggerating his pain and discomfort to obtain Vicodin.  (R. 248, 249, 251.)  <u>Second</u>, Plaintiff had a poor work history, with no reported earnings in 1991-1992, 1996-1999, and 2001-2004 (R. 115); thus, Plaintiff was not working even before sustaining the injury that caused his alleged disability.  <u>Finally</u>, Plaintiff's testimony regarding the extent and effect of his pain contradicts the doctors' assessments of his residual functional capacity (R. 157, 176, 245, 248, 249, 251) and well as his own statements regarding his ability to perform physical activity (R. 34, 41, 123).  Accordingly, the Court finds that there is substantial evidence to support the ALJ's conclusion that Plaintiff's physical ailments did not render him incapable of performing sedentary work.

B. <u>Evidence of Mental Disability</u>

Plaintiff was examined by at least six separate doctors regarding his depression, social anxiety, and PTSD: his treating physicians, Dr. Acer and Dr. Amin, two consultative examiners, Dr. Andrews and Dr. Anderson, his therapist Dr. Lawless, and LMSW Debra Donaldson. The ALJ decided to give little weight to the opinions of Dr. Lawless and Dr. Acer--who both concluded that Plaintiff's mental condition rendered him incapable of returning to work.

According to the "treating physician rule," the medical opinions and reports of a claimant's treating physicians are to be given "special evidentiary weight." <u>Clark v. Comm'r of Soc. Sec.</u>, 143 F.3d 115, 118 (2d Cir. 1998). Specifically, the regulations state:

> Generally, we give more weight to opinions from your treating sources. . . . If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

20 C.F.R. § 416.927(c)(2).

When an ALJ does not accord controlling weight to the medical opinion of a treating physician, the ALJ "must consider various 'factors' to determine how much weight to give to the

opinion." Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004)

(citation omitted); see also Schnetzler v. Astrue, 533 F. Supp.

2d 272, 286 (E.D.N.Y. 2008). Such factors include:

> (1) the length of the treatment relationship
> and frequency of the examination; (2) the
> nature and extent of the treatment
> relationship; (3) the extent to which the
> opinion is supported by medical and
> laboratory findings; (4) the physician's
> consistency with the record as a whole; and
> (5) whether the physician is a specialist.

Schnetzler, 533 F. Supp. 2d at 286 (citing 20 C.F.R. §§

404.1527(d)(2), 416.927(d)(2); Halloran, 362 F.3d at 32).

Additionally, the ALJ is required to provide "'good reasons' for

the weight she gives to the treating source's opinion."

Halloran, 362 F.3d at 32-33; see also Pagan v. Apfel, 99 F.

Supp. 2d 407, 411 (S.D.N.Y. 2000) ("At the very least, the

Commissioner must give express recognition to a treating

source's report and explain his or her reasons for discrediting

such a report." (citation omitted)). "Failure to provide 'good

reasons' for not crediting the opinion of a claimant's treating

physician is a ground for remand." Snell v. Apfel, 177 F.3d

128, 133 (2d Cir. 1999) (citation omitted).

Here, the ALJ stated that he gave Dr. Acer's opinion

little weight because it was "not explained and [was]

contradicted by significant evidence." (R. 16.) Although Dr.

Acer's determination that Plaintiff is incapable of returning to

22

work lacks detail and appears to rely almost exclusively on Plaintiff's subjective accounts of his own symptoms and not on "medically acceptable clinical and laboratory diagnostic techniques" as required by the Regulations, 20 C.F.R. § 404.1527(d)(2), "failure to include this type of support for the findings in [her] report does not mean that such support does not exist." Rosa, 168 F.3d at 79 (internal quotation marks and citation omitted). "[S]he might not have provided this information in the report because [s]he did not know that the ALJ would consider it critical to the disposition of the case." Id. (internal quotation marks and citation omitted). Thus, "[t]he ALJ has an 'affirmative duty' to seek out additional information from the treating physician if there are gaps in the record," like there are here. Sarchese v. Barnhart, No. 01-CV-2172, 2002 WL 1732802, at *4 (E.D.N.Y. July 19, 2002); see also Shaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998) ("[E]ven if the clinical findings were inadequate, it was the ALJ's duty to seek additional information from [the treating physician] sua sponte."). Further, there is no indication that the ALJ considered the length and frequency of Dr. Acer's evaluations of Plaintiff over time or the nature and extent of her relationship with Plaintiff. In fact, the ALJ failed to acknowledge the treating physician rule in its decision. Thus, remand is required for further development of the administrative record

and for the proper application of the treating physician rule to Dr. Acer's conclusions.

The ALJ also discounted the opinion of Dr. Lawless, a therapist with a doctorate in theology, because he is not a medical doctor. (R. 17.) But "although not a physician, and thus not entitled to the level of deference accorded under the 'treating physician rule,' some weight should still have been accorded to [Plaintiff's treating therapist]'s opinion based on his familiarity and treating relationship with the claimant." Pogozelski v. Barnhard, No. 03-CV-2914, 2004 WL 1146059, at *12 (E.D.N.Y. May 19, 2004); accord Mejia v. Barnhart, 261 F. Supp. 2d 142, 148 (E.D.N.Y. 2003) ("Although a psychotherapist's report is not an 'acceptable medical source' . . . as the report of a primary treatment provider, [the psychotherapist's] report should have been accorded more than a 'little' weight as 'an other medical source' pursuant to 20 C.F.R. § 404.1513(d)(1)."). And, while the Court agrees that Dr. Lawless's one-page letter is lacking pertinent information--namely the extent of his relationship with Plaintiff, his course of treatment, and any explanations for his findings, "when the claimant is unrepresented, the ALJ is under a heightened duty to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." Cruz v. Sullivan, 912 F.2d 8, 11 (2d Cir. 1990) (internal quotation marks and citation

omitted); <u>accord</u> <u>Ericksson v. Comm'r of Soc. Sec.</u>, 557 F.3d 79, 83 (2d Cir. 2009). Accordingly, remand is also required for further development of the administrative record and reconsideration of Dr. Lawless's opinion.

CONCLUSION

For the foregoing reasons, the Commissioner's motion is DENIED, and this action is REMANDED for further proceedings consistent with this Memorandum and Order. The Clerk of the Court is directed to mail a copy of this Memorandum and Order to the <u>pro</u> <u>se</u> Plaintiff and to mark this matter CLOSED.

SO ORDERED.

/s/ JOANNA SEYBERT_____
Joanna Seybert, U.S.D.J.

Dated:     September __21__, 2012
           Central Islip, NY